IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **Nancy Carlin, individually and on behalf of all others similarly situated,**<br><br>    Plaintiff,<br><br>v.<br><br>**Navient Solutions, LLC f/k/a Navient Solutions, Inc. f/k/a Sallie Mae, Inc.,**<br><br>    Defendant. | Case No:<br>**JURY DEMAND** |

**CLASS COMPLAINT**

Plaintiff Nancy Carlin, individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief as follows:

**NATURE OF ACTION**

1. Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of defendant, either directly or indirectly by some other person acting as its agent or on its behalf,[1] in negligently, knowingly, and/or willfully making calls to the cellular phone numbers of plaintiff and hereafter defined class and subclass members using an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or using "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without their prior

---

[1] As used herein, "defendant" shall include Navient Solutions, LLC and its predecessors and any and all persons acting as an agent or on behalf any of them in making the hereafter mentioned telephone calls to plaintiff and/or any members of the class or subclass hereafter defined.

express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, and the Federal Communication Commission rules promulgated thereunder, 47 C.F.R. § 64.1200 (hereinafter referred to as the "TCPA"). Such calls are commonly referred to as "robocalls."

2. Robocalls are the #1 consumer complaint in America today.

3. In 2018, there were over 4,000,000 complaints reported to the Federal Communications Commission (FCC) and the Federal Trade Commission (FTC) concerning robocalls—4,022,614 to be exact.[2] Since 2015, there have been a total of 14,559,163 such complaints.[3] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by robocalling abuse could be close to 100,000,000 in the last 4 years.

4. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute."[4]

5. The TCPA was enacted to prevent companies like defendant from invading American citizens' privacy and to prevent illegal robocalls.

---

[2] *Report on Robocalls. CG Docket No. 17-59, A Report of the Consumer and Governmental Affairs Bureau, Federal Communication Commission, 4-5 (Feb. 2019)* https://docs.fcc.gov/public/attachments/DOC-356196A1.pdf (last visited April 19, 2019).

[3] *Id.*

[4] *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

6. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion."[5]

7. Plaintiff brings this action for injunctive relief and statutory damages resulting from defendant's illegal actions.

## JURISDICTION AND VENUE

8. This matter in controversy exceeds $5,000,000, as each member of the proposed class is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Further, plaintiff alleges a national class, which will result in at least one class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this court has jurisdiction. This court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 127 because defendant resides in this district.

## PARTIES

10. Plaintiff is, and at all times mentioned herein was, a resident of Wisconsin.

11. Defendant is, and at all times mentioned herein was, a Delaware limited liability company having its principal office in this district and division located at 2001 Edmund Halley Drive, Reston, VA 20191. Defendant regularly does business in this district and division, has

---

[5] Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368 (2012) ("The Act bans certain practices invasive of privacy").

appointed an agent for service of process within this district, and is subject to this court's personal jurisdiction with respect to this civil action in the district and division and, as such, "resides" in the district and division.

12. Defendant is the largest student loan servicer in the United States. Defendant services the loans of more than 12 million borrowers and more than $300 billion in federal and private student loans.

13. Defendant's principal responsibilities as a servicer include managing borrowers' accounts; processing monthly payments; assisting borrowers to learn about, enroll in, and remain in alternative repayment plans; and communicating directly with borrowers about the repayment of their loans.

14. When a student loan serviced by defendant goes into default, defendant directly and/or through its agents or persons acting on its behalf engages in collection activities as to the defaulted student loan.

15. In connection with its servicing and collection activities, defendant uses skip trace and similar services to identify, obtain and call telephone numbers of borrowers whose student loans are owed to or serviced by defendant.

16. At all times pertinent, defendant was and is engaged in interstate commerce, and defendant used and is using instrumentalities of interstate commerce, including telephone lines, satellites, cell phone towers, and the mail, in the course of its activities set forth herein.

## PROCEDURAL HISTORY

17. Plaintiff first sued defendant in the United States District Court for the Western District of Tennessee by virtue of joining a class action that had been filed on December 22, 2015 by plaintiff Jeffrey Parchman against defendant and others ("the original complaint").

18.     The original complaint tolled the four year statute of limitations for the TCPA claims asserted therein as of December 22, 2015.

19.     The statute of limitations on plaintiff's claims was also tolled as of December 22, 2015 because the amended complaint by which they were asserted related back to the date of the original complaint pursuant to Federal Rule of Civil Procedure 15(c), and because plaintiff was a member of the class for whose benefit the original complaint was filed.

20.     On July 18, 2017 the United States District Court for the Western District of Tennessee dismissed plaintiff's claims for lack of personal jurisdiction, and on July 20, 2018 the Sixth Circuit Court of Appeals affirmed the dismissal.

21.     Because the class action that was filed in the United States District Court for the Western District of Tennessee, of which plaintiff is a member, is still pending and has yet to receive a determination of class certification, plaintiff's claims remain tolled by that action and now by this action.

## THE TELEPHONE CONSUMER PROTECTION ACT

22.     In 1991, Congress enacted the TCPA,[6] in response to a growing number of consumer complaints regarding certain telemarketing practices.

23.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers," and prerecorded voices. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of an autodialer or prerecorded voice to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[7]

---

[6] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227. The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

[7] 47 U.S.C. § 227(b)(1)(A)(iii).

24. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[8]

25. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[9] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[10]

26. Under the TCPA, the burden is on defendants to demonstrate prior express consent.

## FACTUAL ALLEGATIONS

27. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

28. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

---

[8] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[9] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[10] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

29. Plaintiff has, and at all times mentioned herein had, a cellular telephone number ending in 7723 (hereafter "plaintiff's cell phone number").

30. Plaintiff took out a student loan in 2012, and defendant became the servicer of the loan.

31. Plaintiff did not provide a cellular telephone number during the transaction that resulted in the debt owed.

32. Notwithstanding the fact that plaintiff did not provide a cellular telephone number during the transaction that resulted in the debt owed, defendant repeatedly called plaintiff's cell phone number.

33. When plaintiff answered the calls, she heard a noticeable pause (characteristic of autodialed calls) followed by a live person or a prerecorded voice.

34. Plaintiff requested many times that defendant stop calling her cell phone number, including in writing on at least three occasions—on or about October 21, 2014, March 15, 2015 and November 8, 2015.

35. Despite plaintiff's requests, the calls continued.

36. The calls were repeated, annoying, intrusive, and harassing.

37. By effectuating these unlawful phone calls, defendant has caused plaintiff the very harm that Congress sought to prevent - namely, a "nuisance and invasion of privacy."

38. Defendant's aggravating and annoying phone calls trespassed upon and interfered with plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon plaintiff's seclusion.

39. Defendant's phone calls harmed plaintiff by wasting her time.

40. Defendant's phone calls harmed plaintiff through general wear and tear and by depleting the battery life on her cellular telephone. They also deprived plaintiff of the opportunity to make or receive other phone calls using her cell phone while answering and responding to defendant's phone calls.

41. Many or all of the calls by defendant to plaintiff's cell phone number occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or used "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

42. Many or all of the calls by defendant to plaintiff's cell phone number occurred via equipment that has the capacity to: (a) store or produce telephone numbers to be called, or telephone numbers to which text messages can be sent; and (b) dial such telephone numbers or send text messages without human intervention, regardless of whether or not such capacity was actually used to place a particular call or send a particular message.

43. Many or all of the calls by defendant to plaintiff's cell phone number were placed using a predictive dialer as defined by the Federal Communications Commission.[11]

44. None of defendant's calls to plaintiff's cell phone number were "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

45. Plaintiff did not provide prior express consent to receive autodialed or prerecorded calls from defendant to her cell phone number.

46. Defendant claims plaintiff gave prior express consent on November 27, 2014 through a loan management website, but that would have been two years after she took out her

---

[11] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14091 (2003), ¶ 131, and/or *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, GC Docket 02-278, Order on Motion for Reconsideration by ACA International, 23 F.C.C.R. 559,¶¶ 12-14 (Jan. 4, 2008).

loan, and in any event plaintiff requested many times both before and after November 27, 2014 that defendant stop calling her cell phone number, including in writing on at least three occasions—on or about October 21, 2014, March 15, 2015 and November 8, 2015.

47. Plaintiff clearly revoked any express consent defendant may have mistakenly believed it had to make autodialed or prerecorded telephone calls to plaintiff's cell phone number.

48. Defendant has previously been sued by other plaintiffs for placing autodialed or prerecorded calls after the plaintiffs had asked for the calls to stop.

49. Defendant's corporate policy and procedures are structured as to continue to call individuals like plaintiff, despite these individuals revoking any consent defendant may have mistakenly believed it had.

50. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this complaint. Defendant has been sued civilly in federal court hundreds of times since December 2014.[12]

51. In the last 3 years, defendant has had 1,504 complaints reported to the Better Business Bureau (BBB), of which 1,108 are classified as being related to "Billing/Collection Issues."[13]

---

[12] A Party Search of PACER on April 15, 2019, using the name "Navient Solutions" as defendant, resulted in a result count of 831 cases. This result count includes some duplication as cases that used both the "Navient Solutions, LLC" and "Navient Solutions, Inc." in the caption would be counted twice.

[13] Navient, Reviews & Complaints, BETTER BUSINESS BUREAU, https://www.bbb.org/us/de/wilmington/profile/loans/navient-0251-92002017/complaints (last viewed April 19, 2019).

52. Since 2014, defendant has had 26,257 complaints reported to the Consumer Financial Protection Bureau ("CFPB"), of which 780 are classified as being related to "Communication Tactics."[14]

53. On January 18, 2017, the CFPB filed suit against Navient and its wholly-owned debt collector subsidiary, Pioneer Credit Recovery Inc., for their unlawful acts and practices in connection with defendant's servicing and collection of student loans. *Consumer Financial Protection Bureau v. Navient Corporation; Navient Solutions, Inc.; and Pioneer Credit Recovery, Inc.*, Case No. 3:17-cv-00101-RDM (M.D. Pa. 2017).

54. The prohibition of 47 U.S.C. § 227(b)(1)(A)(iii) was "clearly established" when defendant made the calls to the cell phone numbers of plaintiff and the class and subclass members whom she seeks to represent.[15]

55. On information and belief, neither the United States nor any of its departments or agencies or subdivisions (hereafter collectively "the United States") instructed defendant to violate or to ignore § 227(b)(1)(A)(iii).

56. Assuming that defendant was acting as a contractor of the United States in making any or all of the calls to the cell phone numbers of plaintiff and the class and subclass members

---

[14] Consumer Complaints, CONSUMER FINANCIAL PROTECTION BUREAU, https://data.consumerfinance.gov/dataset/Consumer-Complaints/s6ew-h6mp (last visited April 19, 2019).

[15] *See Campbell–Ewald Co. v. Gomez*, 136 S. Ct. 663, 673 (2016) ("Qualified immunity may be overcome ... if the defendant knew or should have known that his conduct violated a right 'clearly established' at the time of the episode in suit." . . . Campbell does not here contend that the TCPA's requirements or the Navy's instructions failed to qualify as "clearly established.") (citations omitted).

whom plaintiff seeks to represent, defendant was not acting on the instructions of the United States in violating and ignoring the prohibitions of § 227(b)(1)(A)(iii).

57. On information and belief, any contract between defendant and the United States that governed the calls made by or on behalf of defendant to the cell phones numbers of plaintiff and the class and subclass members whom plaintiff seeks to represent required that defendant comply with all applicable federal law and with the Telephone Consumer Protection Act in particular.

58. Assuming that defendant was acting as a contractor of the United States in making any or all of the calls to the cell phone numbers of plaintiff and the class and subclass members whom plaintiff seeks to represent, defendant was acting contrary to and in violation of the instructions of the United States in violating and ignoring the prohibitions of § 227(b)(1)(A)(iii).

59. Defendant's calls to plaintiff's cell phone number were made utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of plaintiff's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

60. The burden is on defendant to demonstrate that plaintiff provided prior express consent within the meaning of the statute.[16]

61. Defendant violated the TCPA with respect to plaintiff and the class members.

62. Defendant willfully or knowingly violated the TCPA with respect to plaintiff and the subclass members.

## CLASS ACTION ALLEGATIONS

63. Plaintiff brings this action individually and on behalf of all others similarly situated (hereinafter referred to as "the class").

---

[16] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

64. Plaintiff proposes the following class definition, subject to amendment as appropriate:

> All persons within the United States who had a loan owed to or serviced by defendant and who, on or after December 22, 2011, received a non-emergency call from defendant to a cellular telephone made using an automatic telephone dialing system or an artificial or prerecorded voice, and who did not provide, or who revoked, prior express consent for such calls.

Collectively, all these persons will be referred to as "class members." Plaintiff represents, and is a member of, the class. Excluded from the class are defendant and any entities in which defendant has a controlling interest, defendant's agents and employees, any attorneys appearing in this case and any judge to whom this action is assigned and any member of such judge's staff and immediate family.

65. Plaintiff also brings this action individually and on behalf of another putative sub-class of similarly situated individuals (hereinafter referred to as "the subclass") initially defined as follows:

> All persons within the United States who had a loan owed to or serviced by defendant and who, on or after December 22, 2011, received a non-emergency call from defendant to a cellular telephone made using an automatic telephone dialing system or an artificial or prerecorded voice, and who did not provide, or who revoked, prior express consent for such calls, where defendant continued to call such person's cell phone number using an automatic telephone dialing system or an artificial or pre-recorded voice, after being instructed to stop calling.

66. Plaintiff does not know the exact number of members in the class, or the subclass, but plaintiff reasonably believe that members in each number at a minimum in the thousands.

67. Plaintiff and all members of the class and subclass have been harmed by the acts of defendant, because their privacy has been violated, they were subject to annoying and harassing calls that constitute a nuisance, and they were charged for incoming calls.

68. This class action complaint seeks injunctive relief and money damages.

69. The joinder of all class and subclass members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the court in avoiding a multiplicity of identical suits. The class and subclass can be identified easily through records maintained by defendant.

70. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual class and subclass members. Those common questions of law and fact include, but are not limited to, the following:

   a. Whether defendant made non-emergency calls to plaintiff's and class members' cellular telephones using an automatic telephone dialing system and/or an artificial or prerecorded voice;

   b. Whether defendant can meet its burden of showing it obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated) to make such calls;

   c. Whether defendant's conduct was knowing and/or willful;

   d. Whether defendant is liable for damages, and the amount of such damages; and

   e. Whether defendant should be enjoined from engaging in such conduct in the future.

71. As a person who received numerous and repeated calls on her cellular telephone using an automatic telephone dialing system or an artificial or prerecorded voice, without prior express consent within the meaning of the TCPA and rules, and after instructing defendant to stop calling, plaintiff asserts claims that are typical of each class and subclass member. Plaintiff will fairly and adequately represent and protect the interests of the class and subclass, and she has no interests which are antagonistic to any member of either.

72. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

73.   A class action is the superior method for the fair and efficient adjudication of this controversy. Class wide relief is essential to compel defendant to comply with the TCPA. The interest of class and subclass members in individually controlling the prosecution of separate claims against defendant is small because the statutory damages in an individual action for violation of the TCPA are relatively small. Management of these claims is likely to present substantially fewer difficulties than are presented in many class claims because the calls at issue are all automated and the class and subclass members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

74.   Defendant has acted on grounds generally applicable to the class and subclass, thereby making final injunctive relief and corresponding declaratory relief with respect to the class and subclass as a whole appropriate. Moreover, on information and belief, plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

I.   **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.; 47 C.F.R. § 64.1200**

75.   Plaintiff incorporates by reference the foregoing paragraphs of this complaint as if fully stated herein.

76.   The foregoing acts and omissions of defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. § 64.1200.

77.   As a result of defendant's violations of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. § 64.1200, plaintiff and each member of the class are entitled to statutory damages of $500.00 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

78. As a result of defendant's willful and/or knowing violations of 47 U.S.C. § 227 *et seq.* and 47 C.F.R. § 64.1200, this Court, in its discretion, may award plaintiff and each member of the subclass up to an additional $1,000 in statutory damages for each and every willful and/or knowing violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

79. Plaintiff and all class and subclass members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by defendant in the future.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the court grant plaintiff and all class and subclass members the following relief against defendant:

A. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate class and subclass, finding that plaintiff is a proper representative of the class and subclass, and appointing the lawyers and law firms representing plaintiff as counsel for the class and subclass; and

B. Injunctive relief prohibiting such violations of the TCPA by defendant in the future;

C. For plaintiff and all class members, statutory damages of $500 for each and every violation of the TCPA;

D. For plaintiff and all subclass members, an additional $1,000 in statutory damages for each and every willful and/or knowing violation of the TCPA;

E. An award of attorney fees to be paid out of any common fund created by virtue of this litigation and costs to counsel for plaintiff and the class and subclass; and

F. Such other relief as the court deems just and proper.

April 21, 2019         By:   /s/   William   L.   Downing

CONSUMER LEGAL SOLUTIONS, PC
William L. Downing, Esq., VSB 17704
1071 Bay Breeze Drive
Suffolk, VA 23435
Tel. 757-942-2554
Email: wdowninglaw@aol.com.com

THE HIGGINS FIRM, PLLC
Benjamin J. Miller (*pro hac vice* to be filed)
525 4th Ave S
Nashville, TN 37210
(615) 353-0930
ben@higginsfirm.com
*Attorneys for Plaintiff and the proposed class and subclass*